**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MARVIN L. MORRIS, JR.            :
                                 :
v.                               :   Civil No. WMN-07-494
                                 :
FEDEX KINKO'S OFFICE AND PRINT   :
SERVICES, INC., et al.           :
                                 :

**MEMORANDUM**

Before the Court is the motion of Defendants FedEx Kinko's Office and Print Services, Inc. ("FedEx Kinko's"), Audrey Taylor, and Penny Langrell to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Paper No. 18.  Plaintiff, Marvin L. Morris, Jr., has opposed the motion and Defendants have replied.  Upon a review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion will be granted.

**I.   FACTS AND PROCEDURAL BACKGROUND**

This case arises out of the loss of a bearer bond purchased by Plaintiff in 2005, which was one of a series of bonds issued by the Chinese government in 1913.  Plaintiff alleges the bond has been valued at $9,475,000 and that he has demanded payment on the bond from the Chinese government.[1]  On July 12, 2006, Plaintiff entered the FedEx Kinko's in Salisbury, Maryland, to photocopy the bond.  After making copies, Plaintiff left the bond in the copying machine and exited the store.  He later telephoned the store and spoke with employee Audrey Taylor, who informed him

---

[1] Plaintiff maintains that he had the bond valued by the firm of Stites & Harbison and references attached letters and exhibits verifying this information.  No such attachments were submitted to the Court.

she would retrieve the bond and place it in the store's "Lost & Found," in accordance with FedEx Kinko's store policy.  When Plaintiff returned to the store the next day, the item was no longer in the "Lost & Found."  Taylor and the store's manager, Penny Langrell, attempted to locate the bond but could not find it in the store.  Plaintiff claims Langrell told him FedEx Kinko's was responsible for the item.

The Complaint alleges six counts: separate direct liablity claims for breach of a bailment relationship against Taylor and Langrell (Counts III and IV); one vicarious liability claim against FedEx Kinko's for breach of a bailment relationship (Count I); separate direct liability claims of common-law negligence against Taylor and Langrell (Counts IV and V); and one vicarious liability claim for common-law negligence against FedEx Kinko's (Count VI).

In the instant motion, Defendants argue that each count of the Complaint should be dismissed because Plaintiff failed to state a claim upon which relief can be granted.  Specifically, Defendants contend that Plaintiff failed to allege facts showing the gross negligence or wrongful conduct necessary to constitute a breach of the parties' bailment relationship and that, even if he had, both the bailment claims and the negligence claims are barred by Plaintiff's contributory negligence.  Furthermore, Defendants argue that Plaintiff's claims for damages are barred by federal law including, <u>inter alia</u>, a 1979 Treaty between the

2

United States and the People's Republic of China (PRC).[2]
Finally, Defendants maintain that this action should be stayed pending a decision in the United States District Court for the Southern District of New York brought by Plaintiff to retrieve the value of the bond from the PRC.[3]

**II. STANDARD OF LAW**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Upon review of a motion to dismiss for failure to state a claim, the court must assume the truth of all well-pleaded facts and allegations in the complaint, as well as all inferences that can be reasonably drawn from them in the light most favorable to the plaintiff.  Ibarra v. United States, 120 F.3d

---

[2] Defendant argues that Plaintiff's claim is governed by the International Claims Settlement Act (ICSA) because it involves a "determination of the amount and validity of claims against . . . the Chinese Communist regime . . . out of nationalization, expropriation, intervention, or other takings of, or special measures directed against, property of nationals of the United States[.]"  22 U.S.C. § 1643.  Defendant further contends that the ICSA creates a fund from which claims against the Chinese government should be paid and, once the claims are paid, the related bonds lose their value, preventing Plaintiff from being able to prove damages.  See 22 U.S.C. § 1643b(a).

[3] A decision in that action was entered on March 21, 2007. Morris v. Peoples Republic of China, 478 F. Supp. 2d 561, 563 (S.D.N.Y. 2007).  The Morris Court concluded that it lacked subject matter jurisdiction over the complaint, noting that the PRC is entitled to sovereign immunity.  The Court further found that, had jurisdiction existed, Morris's claims would have been time-barred by the 1979 treaty.  As such, the opinion of the New York court does not directly address the issues currently pending before this Court.

3

472, 474 (4th Cir. 1993).  The Court does not, however, accept as true unwarranted inferences, unreasonable conclusions, arguments, or legal conclusions drawn from the facts.  Eastern Shore Mkts., Inc. v. J.D. Associates Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).  The Court should award dismissal if the allegations and permissible inferences, if true, are not sufficient to allege a claim which would entitle the plaintiff to relief.  Id.

**III. DISCUSSION**

    A.   Claims Alleging Breach of Bailment Relationship

Counts I, III, and V all essentially allege a common law claim that Plaintiff had a bailment relationship with FedEx Kinko's and that the store breached its duty under this relationship when it failed to produce Plaintiff's bond upon his return to the store.  Compl. ¶¶ 38-39, 43-44, 48-49.  Plaintiff claims that FedEx Kinko's is vicariously liable for the store's failure to produce the bond and that the employees, Taylor and Langrell, are directly liable.  Id.

Plaintiff fails, however, to allege facts sufficient for a reasonable jury to find that FedEx Kinko's or its employees breached their bailment relationship with him.  A bailment relationship exists when the personal property of one person (the bailor) is transferred to another (the bailee) for a specific purpose with the intent that the property eventually be returned to the bailor.  See Broadview Apartments Co. v. Baughman, 350 A.2d 707, 709 (Md. 1976); 8A Am. Jur. 2D Bailments § 1.  A gratuitous bailment exists when the bailee takes possession of

4

personal property solely for the benefit of its owner, without compensation.  Mickey v. Sears, Roebuck & Co., 76 A.2d 350, 352 (Md. 1950) (citing Schermer v. Neurath, 54 Md. 491, 496 (1880)); 8A Am. Jur. 2d Bailments § 2.  Here, the facts alleged show that Plaintiff had a gratuitous bailment relationship with FedEx Kinko's because the store was not receiving any compensation in exchange for holding Plaintiff's bond.[4]  By placing the bond in the "Lost & Found" and attempting to hold it until Plaintiff returned to the store, FedEx Kinko's was operating solely for the benefit of Plaintiff.

A gratuitous bailee has a duty to exercise ordinary care to return the property to its owner and "is liable only for wrongful conduct."  Mickey, 76 A.2d at 352; see also Schermer, 54 Md. at 496 (noting that, "[i]n the case of a bailee without reward there is no contract, and he is liable only for wrongful conduct, or according to the expression used in many cases, gross negligence"); 8A Am. Jur. 2d Bailments § 118 (noting that the gratuitous bailee "normally is liable only for gross negligence, meaning a failure to exercise even slight care or diligence").  With respect to a gratuitous bailee, ordinary care has been

---

[4] In contrast, cases finding bailments for hire involve relationships where the bailee was recieving something in return for holding the bailor's property.  See, e.g., Fox Chevrolet Sales, Inc. v. Middleton, 99 A.2d 731, 732-33 (Md. 1953) (explaining that when a customer brought a car to an automobile garage for repairs, the parties had a bailment for hire relationship because the garage was receiving money in exchange for repairing the car).  "In the case of a bailee for hire, liability is usually asserted in a contract action."  Mickey, 76 A.2d at 352.

defined as "such care as persons of common prudence in their own situation and business usually use in the custody and keeping of similar property belonging to themselves."  Fox Chevrolet Sales, 99 A.2d at 734.  Maryland courts have defined gross negligence as "the omission of that care which even inattentive and thoughtless men never fail to take of their own property."  Liscombe v. Potomac Edison Co., 495 A.2d 838, 846 (Md. 1985) (citing Bannon v. Baltimore R.R., 24 Md. 108, 124 (1866)).  Generally, the circumstances surrounding the bailment in question determine whether a bailee has exercised gross negligence.  8A Am. Jur. 2d Bailments § 118.

Here, Plaintiff has not alleged any facts which could constitute gross negligence, even when viewed in the light most favorable to him, as he has not claimed that FedEx Kinko's or its employees acted recklessly or without ordinary care in securing the bond.  Rather, Plaintiff admits that when he called the store to notify them of the bond, Taylor informed Plaintiff that the bond would be placed in the "Lost & Found," as is the ordinary practice in such situations.  He does not allege that the employees deviated from that policy nor does he claim that the policy itself was negligent.

Furthermore, courts have found that when a bailor fails to inform a gratuitous bailee of the value of the property in bailment, the bailee cannot be held to a heightened duty in holding the property.  Mickey, 76 A.2d at 353.  Knowledge or notice is a prerequisite to a bailment of property and the bailee

6

is under a duty of ordinary and reasonable care to protect the property in the condition in which it was received. Id.  In Mickey, the Maryland Court of Appeals applied these principles to a situation where a man left a briefcase at a store, whereupon the employees placed the briefcase in the store's property room, and when the man returned the next day, money in his briefcase had been stolen. Id.  The Court noted that if the nature of the contents had been disclosed, the defendants might have been required to exercise greater care but, without this knowledge, the store was only held to the ordinary care standard, which it exercised by placing the briefcase in the property room.  Id. The facts of the instant case are similar to those in Mickey. Plaintiff has not offered any facts showing or implying knowledge on the part of Defendants as to the alleged value of the bond. Moreover, Plaintiff had an opportunity to inform the employees of the nature and value of the bond and failed to do so. Consequently, FedEx Kinko's and its employees only owed him the duty of ordinary care and, as explained above, Plaintiff has not alleged any facts showing Taylor and Langrell departed from this standard or that the "Lost & Found" policy they followed was grossly negligent.

For the foregoing reasons, each of Plaintiff's claims for breach of the duty owed under parties' bailment relationship will be dismissed.

### B.   Claims Alleging Common Law Negligence

In Counts II, IV, and VI, Plaintiff claims liability on the

7

part of Defendants under a common law theory of negligence, independent of any bailment relationship which may have been formed. Compl. ¶¶ 41, 46, 51. Specifically, Plaintiff alleges that Taylor and Langrell are directly liable for common law negligence and that FedEx Kinko's is vicariously liable for the employees' negligence because they were acting within the scope of their employment. Id. Plaintiff further claims that he was not contributorily negligent or, even if he was, that Defendants had the last clear chance to prevent his injury and failed to do so. Id. Defendants, on the other hand, claim that Plaintiff's contributory negligence is a complete defense to the claims and that Plaintiff has not proven that Defendants had the last chance to avoid his injury because Plaintiff did not inform Defendants of the possible harm.

"Contributory negligence is the neglect of duty imposed upon all men to observe ordinary care for their own safety. It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." Rogers v. Frush, 262 A.2d 549, 552 (Md. 1970). A person is contributorily negligent if he is able to anticipate the harm that might result if he fails to act in a manner consistent with the knowledge, actual or implied, of the harm that could result from his actions. Id.; Ritter v. Portera, 474 A.2d 556, 558 (Md. 1984). Ordinarily, contributory negligence is a question of fact to be resolved at trial. Faith v. Keefer, 736 A.2d 422, 434 (Md.

1999).  Contributory negligence can be found as a matter of law, however, if the negligent acts of the plaintiff are prominent, decisive, and such that ordinary minds would not differ in declaring a plaintiff's actions negligent.  Id. (quoting McSlarrow v. Walker, 467 A.2d 196 (Md. 1983)).

Here, the facts alleged, even when viewed in the light most favorable to Plaintiff, show that he was contributorily negligent in leaving the document in the copying machine and failing to alert the FedEx Kinko's employees of the document's value. Plaintiff is the only one who could have anticipated the harm that would result if he did not immediately retrieve the bond from the copying machine.  By failing to alert Taylor of the bond's value and failing to immediately return to the store to retrieve it, Plaintiff did not act with the level of care necessary to prevent harm to himself.  A reasonable person in his position, knowing he had mislaid a bond allegedly worth more than nine million dollars, would have immediately returned to the store or at least informed the store's employees of the bond's value and told them to use a greater level of care in securing the bond.  Plaintiff did neither.  Thus, under the facts as alleged in his Complaint, Plaintiff is contributorily negligent and, therefore, unable to recover damages.

Plaintiff could recover despite his own contibutory negligence, however, if Defendants had the "last clear chance" to prevent Plaintiff's loss and failed to do so.  The last clear chance doctrine allows a plaintiff to recover even if he was

contibutorily negligent if each of the following elements is satisfied: (1) the defendant is negligent; (2) the plaintiff is contributorily negligent; and (3) the plaintiff makes a showing of something new or sequential which affords the defendant a fresh opportunity - of which he fails to avail himself - to avert the consequences of his original negligence. Nationwide Mut. Ins. Co. v. Anderson, 864 A.2d 201, 206 (Md. Ct. Spec. App. 2004) (quoting Burdette v. Rockville Crane Rental, Inc., 745 A.2d 457 (Md. 2000)); Carter v. Senate Masonry, Inc., 846 A.2d 50, 54 (Md. Ct. Spec. App. 2004).

Here, Plaintiff has not alleged any facts demonstrating that Defendants were negligent in securing the bond. Rather, the Complaint clearly states that the employees secured the bond in the "Lost & Found," in accordance with store policy. Plaintiff does not provide any facts alleging that Taylor or Langrell negligently departed from store policy. In addition, as the third element requires, the last clear chance doctrine only applies if the defendant had a chance to avoid the injury after the plaintiff's negligent act was put in motion. Id. It must be shown that the defendant had a fresh opportunity of which he was aware to avoid injury to the plaintiff and that the defendant failed to do so. Burdette, 745 A.2d at 468 (citing Liscombe, 495 A.2d at 847). Plaintiff does not allege any facts showing that his contributory negligence had ceased and Defendants had a fresh opportunity to avoid Plaintiff's injury. The Complaint also contains no evidence showing any knowledge that would have

allowed Defendants to prevent Plaintiff's loss.  In fact, Plaintiff had the only knowledge about the harm that would result and had an opportunity to inform Defendants about the alleged value and importance of the mislaid bond, which would have given them a fresh opportunity to avoid his alleged injury, but failed to share that information.  Without such knowledge, Defendants cannot be held responsible for failing to exercise a heightened duty of care in protecting Plaintiff's property.

## IV.  CONCLUSION

For the reasons stated above, Defendants' motion to dismiss will be granted.  A separate order consistent with this Memorandum will follow.

```
               /s/
     William M. Nickerson
     Senior United States District Judge
```

Dated: June 21, 2007